

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| Jennifer Florence Dawson, Justin Howell, Adam Chesley, et al., Plaintiffs, | § § § § § § § § § § § |
| v. | |
| City of Dallas, Texas Defendant. | |

CAUSE NO. 3-11CV2698-B

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

### A. Introduction

This First Amendment action for declaratory and injunctive relief is brought by the named Plaintiffs, on behalf of themselves and other similarly situated members of the grass roots political protest movement known as Occupy Dallas, alleging Defendant has unduly restricted or failed to recognize their right to peaceably demonstrate in traditional public forums in the City of Dallas, Texas.

This action, which is accompanied by a request for a temporary restraining order and/or preliminary injunction, alleges that the City of Dallas is violating Plaintiffs' First Amendment rights of expression and assembly.

At its essence this action seeks a declaration from this court that Plaintiffs are not required to secure a Special Event Permit from the City of Dallas to engage in First Amendment-protected activity, and that the Permit as issued comprises an undue burden on their free exercise of that activity.

## B. <u>Factual & Legal Background</u>

The action arises from Defendant's conditioning its "permission" for Plaintiffs' exercise of their First Amendment rights to engage in free speech and assembly at Pioneer Park in Dallas on Plaintiffs' purchase of "a certificate of general liability insurance in the minimum amount of $1,000,000.00 showing the City of Dallas as certificate holder and the City of Dallas, its officers, employees and appointed representatives as additionally insured."

In order to "encourage and give high priority to established and special events that have a record of significantly benefiting the city and to special events that promote commercial film development in the city" the City of Dallas has passed a Special Events ordinance. A Special Event is defined within the ordinance as:

> ...a temporary event or gathering, including a special event parade, using either private or public property, in which the estimated number of participants and spectators exceeds 75 during any day of the event *and* that involves one or more of the following activities, except when the activity is for construction or housemoving purposes only:
>
> (A) closing of a public street;
> (B) blocking or restriction of public property;
> (C) sale of merchandise, food, or beverages on public property outside the central business district, or on private property where otherwise prohibited by ordinance;
> (D) erection of a tent on public property, or on private property where otherwise prohibited by ordinance;[1]
> (E) installation of a stage, bandshell, trailer, van, portable building, grandstand, or bleachers on public property, or on private property where otherwise prohibited by ordinance;
> (F) placement of portable toilets on public property, or on private property where otherwise prohibited by ordinance; or
> (G) placement of temporary no-parking, directional, over-size, or identification signs or banners in or over a public right-of-way, or on private property where otherwise prohibited by ordinance.

Sec. 42A-2 "Definitions" (City of Dallas, Texas, Ord. Nos. 18702; 19869; 21934) Emphasis added.

---

[1] The term "tent" is not defined in the ordinance, however the permitting application requires a "tent permit" be required for a "tent" in excess of 399 sq. ft. The Dallas Fire Rescue Department's "Tent Application Form" applies only to "tents" in excess of 399 sq. ft. Attached hereto as Exhibit ___ to the Appendix.

In order to convene a Special Event, pursuant to the ordinance, an applicant is expected to seek a special event permit constituting written approval to hold a special event granted by the special event manager.

Notwithstanding the fact the assembly of political protesters known as Occupy Dallas does not meet the criteria required to condition its activities on its application for and receipt of a special event permit, representatives of the City of Dallas informed certain individuals involved in Occupy Dallas that such a permit would be required for their continued exercise of their First Amendment rights.

Accordingly, based on the information and instruction given them by representatives of the City, an application was made to the City for issuance of a special event permit for Occupy Dallas on Monday, October 10, 2011. The signatory on the application was George Glynn Wilcox, whose affidavit is attached hereto as **Exhibit A** to the Appendix.

Importantly, on the application Mr. Wilcox made and submitted, titled Special Event & Street Pole Banner Permit Application, in the section where the applicant is asked to estimate how many people do you expect to attend your event, Mr. Wilcox entered the characters "u/k," meaning unknown.

Unilaterally, the City appears to have construed this as a representation on Mr. Wilcox's part that he in fact estimated the number of attendees to exceed 5,000.

This construction on the part of the City is apparent by reference to the "Special Permit" the City issued Mr. Wilcox on Tuesday, October 11, 2011, wherein it asserts the Special Event Permit: "…will be null and void…if…[the applicant fails to]…[p]rovide the Office of Special Events with a certificate of general liability insurance in the minimum amount of $1,000,000.00 showing the City of Dallas as certificate holder and the City of Dallas, its officers, employees and appointed representatives as additionally insured." The "Special Permit" goes on: "The insurance must be

provided to the City of Dallas Office of Special Events by Tuesday, October 11, 2011 by 5:00 P or this permit is subject to being revoked." The Special Permit is attached hereto as **Exhibit B** to the Appendix.

The City's authority for this alleged requirement comes from language in the City ordinance at Sec. 42A-10, "Insurance":

> (a) An applicant for a permit to hold a special event in which the estimated number of participants and spectators exceeds 2,500 for any day of the event shall procure and keep in full force and effect for the duration of the event insurance written by an insurance company approved by the State of Texas and acceptable to the city and issued in the standard form approved by the Texas Department of Insurance. All provisions of each policy must be acceptable to the city. Each policy must name the city and its officers and employees as additional insureds. The coverage provisions of each policy must provide coverage for any loss or damage that may arise to any person or property by reason of the conduct of the special event by the applicant.
>
> (b) Insurance is required in the following types and amounts:
>
> (1) Commercial general liability insurance must be provided with combined single limits of liability for bodily injury and property damage of not less than:
>
> (A) $500,000 for each occurrence, for an estimated daily number of participants and spectators of 2,501 to 4,999; or
>
> (B) ***$1,000,000 for each occurrence, for an estimated daily number of participants and spectators of 5,000 or more.***
>
> (2) If a special event includes vehicles, aircraft, or other equipment, devices, or activities that are excluded from coverage in the commercial general liability insurance policy required in Paragraph (1) of this subsection, then separate additional liability insurance coverage for the applicable exclusion must be provided with combined single limits of liability for bodily injury and property damage of not less than:
>
> (A) $500,000 for each occurrence, for an estimated daily number of participants and spectators of 2,501 to 4,999; or
>
> (B) $1,000,000 for each occurrence, for an estimated daily number of participants and spectators of 5,000 or more.
>
> (3) If any alcoholic beverage is sold, served, or otherwise made available at the special event, then separate additional liquor liability insurance must be

provided by the alcoholic beverage license holder in an amount of not less than $1,000,000 for each claim.

(4) If any fireworks or other special effects are displayed at the special event, then separate additional general liability insurance must be provided by the pyrotechnics company in an amount of not less than $3,000,000 for each claim.

(5) If security guards (other than Dallas police officers or city staff) are used at the special event, then separate additional security guard liability insurance must be provided by the security guard company in an amount of not less than $1,000,000 for each claim.

(6) If emergency response or first aid stations (other than stations staffed by only Dallas fire-rescue officers or city staff) are provided at the special event, then separate additional medical liability insurance must be provided by the applicant in an amount of not less than $1,000,000 for each claim, and if ambulance service (other than service provided by Dallas fire-rescue officers and vehicles) is provided, then separate additional automobile liability insurance must be provided by the ambulance provider in an amount of not less than $1,000,000 combined single limit for each claim.

(7) If amusement rides are provided at the special event, proof of separate additional general liability insurance meeting the state liability and coverage requirements for each particular ride must be provided by the applicant, along with a current certificate of inspection for each ride.

(8) If animals are part of the special event, then separate additional general liability insurance covering any bodily injury and property damage caused by animals must be provided by the applicant in an amount of not less than $500,000 for each claim.

(9) If the special event is conducted at a city-owned facility that is not covered by insurance requirements established by a city lease and use agreement, then separate additional general liability insurance must be provided by the applicant in an amount of not less than $500,000 for each claim.

(c) In addition to the insurance requirements of Subsection (b) of this section, the special event manager may require additional insurance for a special event if such additional insurance is recommended by the city's risk manager as being necessary for the protection of the city or the public health, safety, and welfare.

(d) If a facility or other property owned or managed by the city is subject to both the insurance requirements of this chapter and insurance requirements established by another city ordinance, an official city action, a city lease or use agreement, or other applicable law, then the insurance requirements with

> the greater limits and coverages must be met to conduct the special event at the facility or property.
>
> (e) An original certificate of insurance completed by an authorized agent of the insurance company and evidencing each insurance coverage required under this section must be delivered to the special event manager at least 10 days before the special event begins.

Sec. 42A-10 (City of Dallas, Texas, Ord. Nos. 21934; 26136; 28126) Emphasis added.

In light of the foregoing, because the Occupy Dallas "event" does not involve one or more of the activities listed at Sec. 42A-2 of the City's ordinances, the Occupy Dallas "event" is not a "Special Event."

Moreover, because Mr. Wilcox, the applicant for the "Special Permit" nowhere indicated in his application there would be more that 5,000 persons in attendance, it is not subject to the insurance requirements identified at Sec. 42A-10 (a) and (b)(1)(B) of the City's ordinances.

Indeed, the insurance requirement articulated in the City's "Special Permit" is at once a misconstruction of the City's ordinance requiring insurance for Special Events, and the consequence of its application, in the event the "required" insurance is not obtained, will be an abridgment of complainants First Amendment-protected freedoms of speech and assembly.

In accord with First Amendment jurisprudence in this circuit, ordinances requiring a permit for demonstrations by a handful of people are not narrowly tailored to serve a significant government interest. *Knowles v. City of Waco, Texas* 462 F3d 430 (5th Cir. 2006). Hence, application of the City's Special Event ordinance in this context is unconstitutional. Indeed, the Special Event & Street Pole Banner Permit Application requires identification of an "organization." Occupy Dallas is not an organization. It is best characterized as a slogan of protest. Furthermore, the Special Event & Street Pole Banner Permit Application requires that it be submitted to the City's Office of Special Events not less than 45 days before the event. In the context of activity protected by the First Amendment, this requirement is not narrowly tailored to serve a significant governmental interest.

### C. <u>Argument & Authorities</u>

This Court must weigh four factors to determine whether a preliminary injunction should be issued:

(1) the likelihood that the moving party will succeed on the merits;

(2) the extent to which the moving party will suffer irreparable harm without injunctive relief;

(3) whether the threatened injury outweighs any damage the issuance of the injunction might cause defendants, and

(4) whether the injunction will not disserve the public interest.

*Sugar Busters LLC v. Brennan*, 177 F.3d 258 (5th Cir. 1999).

The balance of factors in this First Amendment case clearly weighs in favor of granting the requested injunction.

## I. PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS OF THEIR FIRST AMENDMENT CLAIM

### A. Defendants Bear the Burden of Proof and Persuasion in this First Amendment Case

Unlike in most legal disputes, in First Amendment cases Defendants carry the burden of proof and persuasion. *Horton v. City of Houston*, 179 F.3d 188 (5th Cir. 1999). In other words, once Plaintiffs have shown a restraint on free expression, the burden shifts to the government agency to both articulate the reasons for and justify the restraint under the relevant First Amendment standard. In this case the court should apply intermediate scrutiny. Under that standard the Defendants cannot satisfy their burden. *Fantasy Ranch, Inc. v. City of Arlington* 459 F.3d 546 (5th Cir. 2006).

### B. The Defendants' Requirement Plaintiffs Purchase Insurance Cannot Be Justified under First Amendment Standards

Plaintiffs in this case seek to engage in quintessential First-Amendment-protected activities. *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 152 (1969); *Hague v. C.I.O.*, 307 U.S. 496, 515-16 (1939). The locus of the protest is key. Streets and parks are traditional public forums that the First

Amendment holds in trust for public use, especially for "purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague*, 307 U.S. at 515. Public streets, parks, and sidewalks have long been recognized as quintessential, "traditional public forum[s]," where First Amendment expressive activities are afforded the strongest protection. "Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens." *Hague*, 307 U.S. at 515–16. In "public places historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, the government's ability to permissibly restrict expressive conduct is extremely limited. . . ." *United States v. Grace*, 461 U.S. 171, 177 (1983).

The government, of course, may impose reasonable restrictions on the time, place or manner of speech in a traditional public forum. But the Defendants must show that the restrictions "are justified without reference to the content of the speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Here, the government fails to meet at least one of the prongs of the *Ward* test. In that the City has not and cannot demonstrate that in the context of First Amendment analysis, the Special Event permitting process requirements concerning the purchase of insurance are not narrowly tailored to serve a significant government interest.

## II. PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF THE COURT DECLINES TO ISSUE THE INJUNCTION

The Supreme Court has noted, "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976) (emphasis added); *see also Swartzwelder v. McNeilly*, 297 F.3d 228, 241–42 (3d Cir. 2002) (restriction on First Amendment rights—in this case police officer's court testimony—constitutes

irreparable harm); American Civil Liberties Union, 217 F.3d 162, 180 (generally in First Amendment challenges plaintiffs who meet the merits prong of the test for a preliminary injunction "will almost certainly meet the second, since irreparable injury normally arises out of the deprivation of speech rights.") (citation omitted); *Abu-Jamal v. Price*, 154 F.3d 128, 135–36 (3d Cir. 1998) (same); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Case Kane, Federal Practice and Procedure § 2948.1 (2d ed.1995) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").

In this case, absent a preliminary injunction the Plaintiffs will be irreparably and irretrievably precluded from exercising their First Amendment rights.

## III. DEFENDANTS WILL SUFFER NO IRREPARABLE HARM IF THIS INJUNCTION ISSUES

The requested order will not prejudice the Defendants' ability to maintain public safety or security.

## IV. GRANTING THE INJUNCTION WILL SERVE THE PUBLIC INTEREST

The free exchange of ideas in Dallas is in the public interest. "[T]ime out of mind, public streets and sidewalks have been used for public assembly and debate, the hallmarks of a traditional public forum." Frisby v. Schultz, 487 U.S. 474, 480 (1988). Enjoining the Defendant from unduly and unfairly burdening political activities in Dallas' public forums is in the public interest.

### Conclusion

WHEREFORE PREMISES CONSIDERED, Plaintiffs respectfully request this court issue an order enjoining the City of Dallas from acting to enforce its permitting requirements against Plaintiffs, and for such other relief as they may show themselves justly entitled to at law or in equity.

**[SIGNATURE PAGE & CERTIFICATE OF SERVICE FOLLOWS]**

Respectfully submitted,

By: _____
Jonathan F. Winocour
State Bar No. 24037730
David P. Ray III
State Bar No. 24027766
WINOCOUR | RAY
9400 N. Central Expressway, Suite 1204
Dallas, Texas 75231
(214) 575-6060 Telephone
(214) 575-6220 Facsimile
jwinocour@winocour-ray.com
dray@winocour-ray.com

By: _____
Corinna Chandler
Texas Bar No. 24061272
Chandler Martinez, L.L.P.
6611 Hillcrest Avenue, Box # 542
Dallas, Texas  75205
(214) 758-0354 Telephone
(214) 758-0362 Facsimile
chandler@chandlermartinez.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document and the accompanying appendix were served on the City Attorney for the City of Dallas via hand delivery on this Wednesday, October 12, 2011.

By: _____
Jonathan F. Winocour