IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JENNIFER FLORENCE DAWSON, et al., § | | |
|     Plaintiffs, § | | |
| § | | |
| v. § | CIVIL ACTION NO. 3:11-CV-02698-B | |
| § | | |
| CITY OF DALLAS, § | | |
|     Defendant. § | | |

**CITY'S BRIEF IN OPPOSITION TO
PLAINTIFFS' REQUEST FOR A TEMPORARY RESTRAINING ORDER**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

The City of Dallas ("City"), Defendant, hereby files its brief in opposition to Plaintiffs' application for a temporary restraining order. The Court should deny the request because Plaintiffs cannot show that injunctive relief is appropriate.

**I.  Summary of Argument**

The City is not preventing Plaintiffs from exercising their First Amendment rights to peaceably assemble and protest on and near the grounds of the Dallas Convention Center, including the area known as Pioneer Plaza. Under the Dallas City Code, no permit is required for assembling and speaking on the convention center grounds. If Plaintiffs want to protest around-the-clock, they can. For example, Plaintiffs may occupy and express their views at Pioneer Plaza between 5:00 a.m. and midnight every day. In addition, Plaintiffs may occupy and express their views on the sidewalks abutting the streets surrounding Pioneer Plaza between the hours of midnight to 5:00 a.m. They do not need to obtain a permit or liability insurance to hold a demonstration and express their views.

The City only seeks to enforce Section 31-37 of the Dallas City Code (App'x 1-2),[1] which prohibits persons from camping and otherwise occupying the convention center grounds (including Pioneer Plaza) between the hours of 12:00 a.m. and 5:00 a.m., and Section 31-13 of the Dallas City Code (App'x 11), which prohibits persons from sleeping in public.

Contrary to Plaintiffs' arguments in their Complaint, Chapter 42A of the Dallas City Code (App'x 3-9) by its own terms expressly does not apply to the Dallas Convention Center grounds.  *See* Dallas City Code § 42A-5.  Furthermore, even assuming that Chapter 42A of the Code somehow applied to the Convention Center grounds, Chapter 42A does not require a special events permit to peaceably assemble and protest, nor does it require a person to obtain insurance for a special event when less than 2,500 persons are expected to attend.

The "special permit" that was issued by the City and given permit number 2011-748, and which is attached as Exhibit B to Plaintiffs' Complaint, was not a permit issued pursuant to Chapter 42A of the Dallas City Code.  Instead, this "special permit" was temporary written permission to the group known as "Occupy Dallas" to occupy Pioneer Plaza between the hours of 12:00 a.m. and 5:00 a.m., from October 10th through October 14th, 2011, and was issued in

---

[1] A court may take judicial notice of facts "not subject to reasonable dispute" that are "generally known within the territorial jurisdiction of the trial court." Fed. R. Evid. 201(b)(1).  "[M]atters of public record such as state statutes, city charters, and city ordinances fall within the category of "common knowledge" and are therefore proper subjects for judicial notice." *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977).  Courts may also judicially notice facts "not subject to reasonable dispute" because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  Under Fed. R. Evid. 902(5) "publications purporting to be issued by public authority" are self-authenticating.  The Dallas City Code provisions cited in this brief fit that description, and, further, are on-line on the City's Internet site at http://www.dallascityhall.com/html/codes.html, further qualifying the contents of the Code as "purporting to be issued by public authority" and as a source "whose accuracy cannot reasonably be questioned."  The City requests that the Court take judicial notice of the ordinances attached to its Appendix which is filed simultaneously with this brief.

accordance with Section 31-37 of the Dallas City Code.  This is clear from the language of the "special permit," which states that Occupy Dallas "will reside in Pioneer Plaza."

Since that permission expires at midnight on October 14, 2011, Plaintiffs do not have the right to occupy Pioneer Plaza between the hours of midnight to 5:00 a.m. after October 14, 2011.  The closure of Pioneer Plaza is a reasonable time and place restriction.

## II.  Argument and Authorities

### A.  Standard of Review

The purpose of an injunction for preliminary relief such as a temporary restraining order is to preserve the status quo pending either a permanent injunction or a trial on the merits.  The necessary elements to demonstrate the appropriateness of such relief are:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006) (internal quotations omitted).  Plaintiffs do not dispute this requirement.  (See, Plaintiffs' Brief at p. 7).

### B.  Applicable City Ordinances

Section 31-37 of the Dallas City Code is entitled "Hours of Closure for Certain City Property." That section regulates when certain properties of the City are open to the public:

> (a)   In this section: … (3) CONVENTION CENTER GROUNDS means the grounds, including Pioneer Plaza, surrounding the Dallas convention center …
>
> (b)   The following city property will be closed to the public each day from 12:00 midnight until 5:00 a.m. … (2) the convention center grounds; and…
>
> (c)   A person commits an offense if he is on the premises of a city property designated in Subsection (b) during hours in which the property is closed.
>
> (d)   It is a defense to prosecution under Subsection (c) that the person was: … (2) on the city property in accordance with the terms of a lease, rental agreement, contract, or other written permission from the city…

Section 31-13 of the Dallas City Code is entitled "Sleeping in a Public Place." That section provides in pertinent part: "A person commits an offense if he: (1) sleeps or dozes in a street, alley, park, or other public place ..."

Chapter 42A of the Dallas City Code regulates special events and it requires a permit for certain special events within the City. However, Section 42A-5, entitled "Exemptions," specifically exempts the convention center grounds from the application of the special events permitting requirements. Section 42A-5 refers to Section 43-127 of the Dallas City Code (App'x 12-16) for the area of the land contained within the "convention center" and it includes the same area as outlined in Section 31-37 of the Dallas City Code. It also exempts demonstrations at a fixed location other than the roadway of a street.

**C.     Plaintiffs Cannot Show a Substantial Likelihood of Success on the Merits.**

**1.     Plaintiffs' camping and sleeping in public is not speech protected by the First Amendment.**

Claims under the Free Speech Clause of the First Amendment are analyzed in three steps: First, a court "must ... decide whether [the activity at issue] is speech protected by the First Amendment, for, if it is not, we need go no further." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,* 473 U.S. 788, 797, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). Second, assuming the activity is protected speech, the court "must identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic." *Id.* And third, the court must assess whether the government's justifications for restricting speech in the relevant forum "satisfy the requisite standard." *Id.*

Here, Section 31-37 of the Dallas City Code regulates conduct, not expression; therefore, it does not impair Plaintiffs' First Amendment rights. Plaintiffs are camping outdoors at Pioneer

Plaza and apparently plan to camp there indefinitely. Camping outdoors is not a constitutionally protected activity. *Joel v. City of Orlando*, 232 F.3d 1353, 1358-59 (11th Cir. 2000) (finding ordinance prohibiting camping and sleeping on public property did not violate homeless persons' due process, equal protection, or Eighth Amendment rights and was rationally related to city's interest in promoting aesthetics, sanitation, public health and safety). Furthermore, the act of sleeping in public, absent expressive content, is not a constitutionally protected activity. *See, e.g., Whiting v. Town of Westerly*, 743 F. Supp. 97 (D. R.I. 1990), *aff'd*, 942 F.2d 18, 21-22 (1st Cir. 1991) (upholding ordinance prohibiting sleeping outdoors or in a car parked in a public place, finding it was not facially overbroad and was not a constitutionally protected activity, absent expressive content). Here, Plaintiffs have failed to show how the act of sleeping in public contains expressive content. To the extent it contains expressive content, that same content can be expressed just as well (and presumably better) while awake.

Moreover, in *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984), a case which is directly on point, the Supreme Court held that the government could prohibit sleeping in temporary quarters on certain public property as a part of a public demonstration. In that case, the Community for Creative Non-Violence ("CCNV"), in an effort to call the public's attention to the plight of the homeless, sought to establish "tent cities" in Lafayette Park and the Mall, which are national parks, in the heart of Washington, D.C. The National Park Service did not permit camping, which was defined as sleeping activities, in Lafayette Park or the Mall. While the Court assumed without deciding that overnight camping in connection with a demonstration was expressive, it noted that expression that is symbolized by conduct is subject to reasonable time, place and manner restrictions. *Id*. at 3069. The Court held that the Park Service regulations were a reasonable time, place, and manner restriction.

In this case, the City's prohibition of occupying Pioneer Plaza during the early morning hours is obviously content-neutral because it prohibits all activity during these early morning hours, not those related to the content of one's speech. *Id*. at 3070. There are also alternate avenues of communication that Plaintiffs can take advantage of—; for example, they can demonstrate on the sidewalks abutting the streets adjoining Pioneer Plaza during the hours of midnight to 5:00 a.m.

The City's prohibition of sleeping in public places is also clearly content-neutral because the prohibition is not related to the viewpoints of the sleeper. In addition, there are ample alternative places where Plaintiffs may sleep.

> **2. Even if Plaintiffs' conduct is protected by the First Amendment, the City's regulations are reasonable time, place, and manner restrictions.**

Even assuming, arguendo, that what Plaintiffs seek to do—to camp and sleep in Pioneer Plaza between midnight and 5:00 a.m.—is conduct protected by the First Amendment, the City's prohibition of occupying Pioneer Plaza during these hours does not violate the First Amendment.

The First Amendment to the United States Constitution provides, in relevant part, that "Congress shall make no law ... abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble ..." U.S. Const. amend I. The First Amendment is binding on the states through the Fourteenth Amendment. *Healy v. James,* 408 U.S. 169, 171, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972). Although the First Amendment prohibits the government from abridging freedom of speech, it does not prohibit all regulation of expressive activities. "Even protected speech is not equally permissible in all places and at all times. Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the

property or to the disruption that might be caused by the speaker's activities." *Cornelius,* 473 U.S. at 799–800.

The constitutionality of a regulation on free speech is dependent in large part on where that speech is being exercised. See *Perry,* 460 U.S. at 44. Thus, the Court must first determine what type of forum is involved in this case. The Supreme Court has identified four types of forums in the context of First Amendment activity occurring on government-owned property: (1) the traditional public forum, (2) the public forum created by governmental designation, (3) the limited public forum, and (4) the nonpublic forum. *Cornelius v. NAACP Legal Def. & Edu. Fund, Inc.,* 473 U.S. 788, 802, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985).

For purposes of this brief, the City will assume that the grounds outside of the Dallas Convention Center (including Pioneer Plaza) are a public forum. The City may regulate "the time, place, and manner of expression" occurring in a public forum if the regulations "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).

Here, the City's regulations are plainly content-neutral. In addition, they are narrowly tailored to serve a significant governmental interest because they are intended to: (1) prevent persons from being victims of crime, of which there is an elevated risk in a dark area late at night in the downtown area, especially if the victim is asleep; (2) limit or eliminate the need for police and other municipal services during the hours of closure; (3) avoid or reduce litter, urinating and defecating in public, and noise; (4) avoid the unsightly appearance of encampments and persons sleeping in public, which historically are associated with urban blight; and (5) reduce or avoid damage to public property. This Court has previously upheld Section 31-37 of the City Code,

determining that it was intended to reduce crime. *See, e.g., Prince Johnson v. City of Dallas*, 860 F. Supp. 344, 357-58 (N.D. Tex. 1994) (finding Section 31-37 was rationally related to legitimate governmental interest, in view of evidence that homeless persons were more likely to be victims as well as perpetrators of criminal activity), *rev'd on other grounds by* 61 F.3d 442 (5th Cir. 1995). Both safety and aesthetics are broadly recognized as significant governmental interests. *See, e.g., Providence Journal Co. v. City of Newport*, 665 F. Supp. 107, 113 (D.R.I. 1987) (collecting cases).

Moreover, the City's ordinances leave open ample alternative channels of communication because Plaintiffs may express their views on the Dallas Convention Center grounds 19 hours of each day and on the sidewalks abutting the streets surrounding the Dallas Convention Center during the remaining 5 hours of each day.

**D.     Plaintiffs Cannot Show a Substantial Threat That They Will Suffer Irreparable Injury if the Temporary Restraining Order is Denied.**

Plaintiffs will not suffer irreparable injury if they are not permitted to camp in, sleep, or otherwise occupy Pioneer Plaza during the early morning hours. Plaintiffs seek to exercise their rights of free speech by protesting socio-economic equality. (See, Plaintiffs' Complaint, Ex. B). As shown above, the City is not preventing Plaintiffs from expressing such views. Plaintiffs are free to peaceably assemble and protest for 19 hours out of every day in Pioneer Plaza, and the remaining 5 hours of every day on the sidewalks abutting the streets surrounding Pioneer Plaza. Therefore, the City is not abridging or otherwise harming Plaintiffs' right of free speech. Accordingly, Plaintiffs have not suffered a cognizable irreparable injury.

**E.      Plaintiffs Cannot Show That the Threatened Injuries Outweigh any Damage the Injunction may Cause.**

As the City showed above, Plaintiffs will not be injured if they are not permitted to occupy Pioneer Plaza between the hours of midnight and 5:00 a.m.  Plaintiffs, if they desire to peaceably assemble and protest around-the-clock, can occupy Pioneer Plaza from 5:00 a.m. to midnight and the sidewalks abutting the streets surrounding Pioneer Plaza between the hours of midnight to 5:00 a.m.  Plaintiffs will, therefore, suffer no infringement of their First Amendment rights.  They simply will not be permitted to camp or sleep in, or otherwise occupy Pioneer Plaza during the early morning hours.

**F.      Granting Plaintiffs an Injunction Will Disserve the Public Interest.**

As explained in Section C.2 above in more detail, the City's regulations are intended to: (1) prevent persons from being victims of crime; (2) limit or eliminate the need for police and other municipal services during the hours of closure; (3) avoid or reduce litter, urinating and defecating in public, and noise; (4) avoid the unsightly appearance of encampments and persons sleeping in public; and (5) reduce or avoid damage to public property.  Thus, the public interest will be disserved if Plaintiffs are allowed to occupy Pioneer Plaza between the hours of midnight and 5:00 a.m. and sleep in public.

**G.      Conclusion and Prayer**

Plaintiffs cannot show that a temporary restraining order is appropriate, therefore, their request should be denied.

Respectfully submitted,

THOMAS P. PERKINS, JR.
Dallas City Attorney

s/ *Christopher J. Caso*
James B. Pinson
Texas Bar No. 16017700
Peter Brooke Haskel
Texas Bar No. 09198900
Christopher J. Caso
Texas Bar No. 03969230
Christopher D. Bowers
Texas Bar No. 02731300
Assistant City Attorneys

Office of the City Attorney
1500 Marilla Street, Room 7BN
Dallas, Texas 75201-6318
Telephone: 214-670-1330
Telecopier: 214-670-0622
james.pinson@dallascityhall.com
peter.haskel@dallascityhall.com
chris.caso@dallascityhall.com
chris.bowers@dallascityhall.com

Counsel for the City of Dallas

## CERTIFICATE OF FILING AND SERVICE

I certify that on October 13, 2011, I electronically filed the foregoing document with the clerk of court for the United States District Court for the Northern District of Texas using the electronic case failing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all counsel of record who have consented in writing to accept this Notice as service of this document by electronic means.

*s/ Christopher J. Caso*
Christopher J. Caso