IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JENNIFER FLORENCE DAWSON, et al., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-02698-B |
| | § | |
| CITY OF DALLAS, | § | |
| Defendant. | § | |

**DEFENDANT CITY OF DALLAS' APPENDIX**
**IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER**

Pursuant to Local Rule 7.1(i) of the Local Rules of the U.S. District Court for the Northern District of Texas, Defendant City of Dallas submits its Appendix in Opposition to Plaintiffs' Application for Temporary Restraining Order.

| Appendix No(s). | Description |
|---|---|
| 1 – 2 | Dallas City Code, Section 31-37 |
| 3 – 10 | Dallas City Code, Chapter 42A |
| 11 | Dallas City Code, Section 31-13 |
| 12 – 16 | Dallas City Code, Section 43-127 |

Respectfully submitted,

THOMAS P. PERKINS, JR.
Dallas City Attorney

*s/ Christopher J. Caso*
James B. Pinson
Texas Bar No. 16017700
Peter Brooke Haskel
Texas Bar No. 09198900
Christopher J. Caso
Texas Bar No. 03969230
Christopher D. Bowers
Texas Bar No. 02731300
Assistant City Attorneys

Office of the City Attorney
1500 Marilla Street, Room 7BN
Dallas, Texas 75201-6318
Telephone: 214-670-1330
Telecopier: 214-670-0622
james.pinson@dallascityhall.com

Counsel for the City of Dallas

## CERTIFICATE OF FILING AND SERVICE

I certify that on October 13, 2011, I electronically filed the foregoing document with the clerk of court for the United States District Court for the Northern District of Texas using the electronic case failing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all counsel of record who have consented in writing to accept this Notice as service of this document by electronic means.

*s/ Christopher J. Caso*
Christopher J. Caso

(g) In addition to any enforcement action by a peace officer for a violation of this section, any person who is a victim of a solicitation prohibited under Subsection (b), (c), (d), or (e), or who witnesses a violation of Subsection (c), (d), or (e), may file a complaint with the city attorney. Evidence to support a conviction for a violation of this section may include, but is not limited to, testimony of witnesses, videotape evidence of the violation, and other admissible evidence. (Ord. Nos. 21030; 25213; 26738)

SEC. 31-36.   MENACING ANOTHER PERSON.

(a) In this section, BODILY INJURY and SERIOUS BODILY INJURY have the meaning given each term, respectively, in Section 1.07 of the Texas Penal Code, as amended.

(b) A person commits an offense if he intentionally places or attempts to place another person in fear of bodily injury, serious bodily injury, or death by:

(1) following the other person on two or more occasions; or

(2) over a period of time, engaging in a course of conduct or committing two or more specific acts against the other person that would cause a reasonable person to fear bodily injury, serious bodily injury, or death. (Ord. 21443)

SEC. 31-37.   HOURS OF CLOSURE FOR CERTAIN CITY PROPERTY.

(a) In this section:

(1) CENTRAL LIBRARY GROUNDS means the grounds surrounding the J. Erik Jonsson central library bounded by Wood Street on the north, Ervay Street on the east, Young Street on the south, and the property line wall located approximately 340 feet west of Ervay Street on the west.

(2) CITY HALL PLAZA means the grounds surrounding city hall bounded by Young Street on the north, Ervay Street on the east, Canton Street on the south, and Akard Street on the west.

(3) CONVENTION CENTER GROUNDS means the grounds, including Pioneer Plaza, surrounding the Dallas convention center that are contained within the following boundaries:

Beginning at the intersection of Young Street and Akard Street;

West on Young Street to Griffin Street;

South on Griffin Street approximately 407 feet;

West in a straight line for approximately 863 feet to the Jefferson Boulevard Viaduct;

Southwest on the Jefferson Boulevard Viaduct to the Union Pacific Railroad;

Southeast along the Union Pacific Railroad to Horton Street;

Northeast on Horton Street to Lamar Street;

Northwest on Lamar Street to Memorial Drive;

East on Memorial Drive to Griffin Street;

Southeast on Griffin Street to Canton Street;

Northeast on Canton Street to Akard Street;

North on Akard Street to Young Street at the point of beginning.

(b) The following city property will be closed to the public each day from 12:00 midnight until 5:00 a.m.:

(1) the city hall plaza;

(2) the convention center grounds; and

(3) the central library grounds.

(c)   A person commits an offense if he is on the premises of a city property designated in Subsection (b) during hours in which the property is closed.

(d)   It is a defense to prosecution under Subsection (c) that the person was:

(1)   attending or working at a special event, activity, convention, or program that was being conducted with city authorization on the city property or subsequently leaving the event, activity, convention, or program within a reasonable time after it had ended for the day;

(2)   on the city property in accordance with the terms of a lease, rental agreement, contract, or other written permission from the city; or

(3)   a city employee or a law enforcement officer in the performance of official duties. (Ord. 22036)

SEC. 31-38.   DUTY OF PROPERTY OWNER TO REMOVE GRAFFITI.

(a)   In this section:

(1)   DIRECTOR means the director of the department designated by the city manager to enforce and administer this section or the director's authorized representative.

(2)   GRAFFITI means any marking, including, but not limited to, any inscription, slogan, drawing, painting, symbol, logo, name, character, or figure, that is made in any manner on tangible property.

(3)   OWNER means any person with the legal right of possession to tangible property.

(b)   An owner of any tangible property in the city commits any offense if he fails to remove all graffiti from the property that is visible from any public property or right-of-way or from any private property other than the property on which the graffiti exists, unless the graffiti was created on the property with the owner's consent and does not violate the sign regulations of the Dallas Development Code or any other applicable city ordinance or state or federal law.

(c)   Before issuing a citation for a violation under Subsection (b) of this section, the director shall serve the property owner with written notice to remove the graffiti from the property within 21 calendar days from the date the notice is served. The notice may be served by handing it to the owner in person or by United States certified mail, five-day return receipt requested, addressed to the owner at the owner's post office address as shown on the tax rolls of the city or of the county in which the premises are located. If the owner cannot be found and the notice is returned by the United States Postal Service, then the owner may be notified by:

(1)   publication two times within 10 consecutive days in the official newspaper adopted by the city council;

(2)   posting the notice on or near the front door of each building on the premises to which the violation relates; or

(3)   posting the notice on a placard attached to a stake driven into the ground on the premises to which the violation relates, if the premises contains no buildings.

(d)   The 21 calendar days will be counted:

(1)   from the date the notice is personally served on the owner or from the sixth day after the notice is placed in the United States certified mail; or

(2)   if the owner cannot be found or the notice is returned by the United States Postal Service, from the date the notice is:

(A)   published for the second time in accordance with Subsection (c)(1) of this section; or

(B)   posted in accordance with Subsection (c)(2) or (3) of this section.

(e)   It is a defense to prosecution under Subsection (b) of this section that:

(1)   no notice was served on the property owner in compliance with Subsection (c);

CHAPTER 42A

SPECIAL EVENTS

ARTICLE I.

GENERAL PROVISIONS.

| | |
|---|---|
| Sec. 42A-1. | Purpose. |
| Sec. 42A-2. | Definitions. |
| Sec. 42A-3. | General authority and duty of special event manager. |
| Sec. 42A-4. | Chapter cumulative. |
| Sec. 42A-5. | Exemptions. |
| Sec. 42A-6. | Vendors at a special event. |

ARTICLE II.

SPECIAL EVENT PERMITS.

| | |
|---|---|
| Sec. 42A-7. | Application; issuance. |
| Sec. 42A-8. | Fees. |
| Sec. 42A-9. | Notice. |
| Sec. 42A-10. | Insurance. |
| Sec. 42A-11. | Indemnification. |
| Sec. 42A-12. | Security; crowd control; and traffic control. |
| Sec. 42A-12.1. | Portable restroom requirements. |
| Sec. 42A-13. | Denial or revocation. |
| Sec. 42A-14. | Appeal from denial or revocation of a special event permit. |

ARTICLE III.

ENFORCEMENT.

| | |
|---|---|
| Sec. 42A-15. | Offenses. |
| Sec. 42A-16. | Penalty. |

ARTICLE I.

GENERAL PROVISIONS.

SEC. 42A-1.    PURPOSE.

The purpose of this chapter is to facilitate the promotion of events and activities within the city, especially within the central business district, to create a more positive image of the city and to stimulate significant economic growth in the city. To this end, it is the city's intent to encourage and give high priority to established special events that have a record of significantly benefiting the city and to special events that promote commercial film development in the city. (Ord. 21934)

SEC. 42A-2.    DEFINITIONS.

In this chapter:

   (1)  APPLICANT means a person who has filed a written application for a special event permit.

   (2)  CITY means the city of Dallas, Texas.

   (3)  CITY-LICENSED VENDOR means any person licensed or permitted under this code or another city ordinance to sell or offer for sale food, beverages, goods, or services at or within a specific location or area in the city.

   (4)  CITY-SPONSORED SPECIAL EVENT means a special event that the city council, by resolution, has:

      (A)  determined to be directly related to a recognized function of city government;

      (B)  declared the city a cosponsor of the event; and

      (C)  committed the city to significantly sharing in initiating, financing, supporting, and conducting the event.

   (5)  DEMONSTRATION means a public display of the attitude of assembled persons toward a person, cause, issue, or other matter.

   (6)  ESTABLISHED SPECIAL EVENT means an event or activity that:

      (A)  occurs at least once a year;

      (B)  has an average attendance exceeding 1,000 participants and spectators for each day of the event or activity;

      (C)  significantly contributes to positive advertising and economic growth of the city; and

(D) is open to the public, with or without an entry fee.

(7) PERSON means an individual, firm, partnership, corporation, association, or other legal entity.

(8) SPECIAL EVENT means a temporary event or gathering, including a special event parade, using either private or public property, in which the estimated number of participants and spectators exceeds 75 during any day of the event and that involves one or more of the following activities, except when the activity is for construction or housemoving purposes only:

(A) closing of a public street;

(B) blocking or restriction of public property;

(C) sale of merchandise, food, or beverages on public property outside the central business district, or on private property where otherwise prohibited by ordinance;

(D) erection of a tent on public property, or on private property where otherwise prohibited by ordinance;

(E) installation of a stage, bandshell, trailer, van, portable building, grandstand, or bleachers on public property, or on private property where otherwise prohibited by ordinance;

(F) placement of portable toilets on public property, or on private property where otherwise prohibited by ordinance; or

(G) placement of temporary no-parking, directional, over-size, or identification signs or banners in or over a public right-of-way, or on private property where otherwise prohibited by ordinance.

(9) SPECIAL EVENT MANAGER means the person designated by the city manager to implement, administer, and enforce this chapter, and includes any designated representative of the special event manager.

(10) SPECIAL EVENT PARADE means the assembly of three or more persons whose gathering is for the common design of traveling or marching in procession from one location to any other location for the purpose of advertising, promoting, celebrating, or commemorating a thing, person, date, or event that is not directly related to the expression of feelings and beliefs on current political, religious, or social issues.

(11) SPECIAL EVENT PERMIT means written approval to hold a special event granted by the special event manager under this chapter. (Ord. Nos. 18702; 19869; 21934)

SEC. 42A-3. GENERAL AUTHORITY AND DUTY OF SPECIAL EVENT MANAGER.

(a) The special event manager shall implement, administer, and enforce the provisions of this chapter.

(b) The special event manager has authority to issue a special event permit that authorizes one or more of the activities described in Section 42A-2(8) when requirements of this chapter have been met.

(c) In addition to other duties designated by this chapter, the city manager, or the city council, the special event manager shall provide for the enhancement of commercial film development in the city by assisting the film industry in:

(1) identifying film locations;

(2) securing required permits;

(3) coordinating traffic and security needs; and

(4) providing information.
(Ord. Nos. 18702; 21934)

SEC. 42A-4. CHAPTER CUMULATIVE.

(a) The provisions of this chapter are cumulative of all city ordinances. Except as provided in Subsection (c), tent permits, building permits, electrical permits, food establishment permits, alcoholic beverage licenses, and all other permits and licenses required by ordinance or other law for specific activities to be conducted in conjunction with

or as part of the special event must be applied for separately, in accordance with the applicable ordinance or law. The special event manager shall receive and coordinate applications for any city-issued permit or license required in addition to the special event permit.

   (b)   Application for a special event permit authorizes appropriate city departments to issue permits for the activities described in Section 42A-2(8) in locations where the activity would otherwise be prohibited by ordinance.

   (c)   The following permits and licenses, and any fees applicable to those permits and licenses, are not required for a special event conducted in compliance with this chapter and the terms of a valid special event permit:

      (1)   A license for the use of public right-of-way required by Article VI of Chapter 43 of this code.

      (2)   A central business district concession license or location permit required by Division 2, Article XII of Chapter 50 of this code. (Ord. Nos. 18702; 21934)

SEC. 42A-5.   EXEMPTIONS.

   The provisions of this chapter do not apply to:

      (1)   a special event conducted entirely on:

         (A)   property under the control of the park and recreation board;

         (B)   the "convention center" or "reunion arena" as defined in Section 43-127 of this code; or

         (C)   the "municipal produce market" as defined in Section 29-3 of this code;

      (2)   a parade, as defined in Section 28-186(4) of this code, for which a permit has been issued under Article XVI of Chapter 28 of this code; except that a special event permit must be obtained for any activity not covered by the parade permit that is conducted in conjunction with the parade and that comes within the definition of a special event; or

      (3)   a demonstration at a fixed location other than the roadway of a street. (Ord. Nos. 18702; 19869; 21934; 26136)

SEC. 42A-6.   VENDORS AT A SPECIAL EVENT.

   (a)   Not less than 10 days before a special event begins, the special event manager shall deliver notice to every city-licensed vendor lawfully operating at or within a location or area in which the special event will be conducted.

   (b)   The notice must include:

      (1)   the date, hours, and location of the special event;

      (2)   any special requirements that the city-licensed vendor must meet to operate at the special event, including:

         (A)   any locations from which the vendor is prohibited from vending, a map of which must be included with the notice;

         (B)   any designated food, beverage, or product brand being promoted by the special event sponsor that the vendor is required to sale or advertise, provided that the vendor is only required to make expenditures for the actual food, beverage, or product to be sold; and

         (C)   any special payment procedures for the sale of any food, beverage, product, or service;

      (3)   a statement that the special event manager may be contacted with any questions or comments concerning the special event.

   (c)   The special event manager may order any city-licensed vendor who violates the special requirements of the notice to cease, for the duration of the special event, selling or offering for sale food, beverages, goods, or services at any location within 25 feet of the area designated in the special event permit for the conduct of the special event.

(d)  A city-licensed vendor commits an offense if he continues to sell or offer for sale food, beverages, goods, or services from a location in violation of the special event manager's order. (Ord. 21934)

## ARTICLE II.

## SPECIAL EVENT PERMITS.

SEC. 42A-7.  APPLICATION; ISSUANCE.

(a)  A person desiring to hold a special event shall apply for a special event permit by filing with the special event manager a written application upon a form provided for that purpose. Each application must be accompanied by the required application fee. An application must be filed not less than 45 days before the special event is to begin. The special event manager may waive the 45-day filing requirement if the application can be processed in less than 45 days, taking into consideration the number and types of permits required to be issued in conjunction with the special event permit.

(b)  An application must contain the following information:

(1)  the name, address, and telephone number of the applicant and of any other persons responsible for the conduct of the special event;

(2)  a description of the special event, including any historical and promotional information, and requested dates and hours of operation for the event;

(3)  the estimated number of participants and spectators at the special event;

(4)  a drawing showing the area or route to be used during the special event, along with proposed structures, tents, fences, barricades, signs, banners, and restroom facilities;

(5)  provisions for parking with a designation of where "No Parking" signs will be used;

(6)  details of how applicant proposes to provide security and traffic control and for any medical or other emergency;

(7)  the time and location of street closings, if any are requested;

(8)  details of the sale of merchandise or the sale or serving of food or alcoholic or nonalcoholic beverages at the special event, designating any street vendors or peddlers involved;

(9)  a description of animals to be used in the special event, if any;

(10)  a description of each motor vehicle to be used in the special event and proof that each vehicle is covered by insurance meeting the minimum requirements of:

(A)  Section 42A-10 of this chapter, if the estimated number of participants and spectators at the special event exceeds 2,500 for any day of the event; or

(B)  the Texas Motor Vehicle Safety Responsibility Act (Chapter 601, Texas Transportation Code), as amended, if the estimated number of participants and spectators at the special event does not exceed 2,500 for any day of the event;

(11)  the name of each person who will operate a motor vehicle as part of the special event and proof that each person holds a valid driver's license;

(12)  details of how the applicant will clean up the area used after the special event, if on public property;

(13)  proof that the applicant possesses or is able to obtain all licenses and permits required by this code or other city ordinance or by state law for the conduct of the special event;

(14)  if the applicant is a corporation, copies of a current certificate of account status issued by the Texas Comptroller's Office and a current certificate of existence issued by the Texas Secretary of State's Office, or, if the corporation is not incorporated in or holding a certificate of authorization in the State of Texas, copies of similar current certificates from the state in which the corporation is incorporated; and

(15) a description (including but not limited to the name, date, location, and size) of each special event that the applicant conducted or sponsored, or participated in conducting or sponsoring, within the preceding two years.

(c) Upon receipt of the completed application, the special event manager shall forward a copy of the application to the building official, to the departments of police, fire, equipment and building services, public works and transportation, risk management, street services, sanitation services, and code compliance, and to Dallas area rapid transit (DART). If any part of the special event is to be held on or adjacent to property that is exempt from this chapter under Section 42A-5, the special event manager shall also forward a copy of the application to the department that manages or controls the exempt property. Each department and DART shall review the application and return it, with any comments, to the special event manager within 10 working days of receipt.

(d) The departments, DART, and the special event manager may prescribe licenses, permits, and authorizations required by other city ordinances or applicable law, restrictions, regulations, safeguards, and other conditions necessary for the safe and orderly conduct of a special event, to be incorporated into the permit before issuance.

(e) After reviewing the application and comments, the special event manager shall issue the special event permit unless denial is required by Section 42A-13. A special event permit will be issued for a period not to exceed 10 consecutive days. A special event permit may be renewed, without payment of the application fee, for additional consecutive 10-day periods during which a special event will be conducted, unless the time limitations set forth in Section 42A-13(a)(12) of this chapter would be exceeded. (Ord. Nos. 18702; 19312; 19869; 20612; 21934; 22026; 23694; 24554; 26136; 27697)

SEC. 42A-8.   FEES.

(a) An applicant for a special event permit shall pay the following fees to conduct the special event:

(1) A nonrefundable application fee of:

(A) $30 for a special event (other than one involving commercial filming activity) in which the estimated number of participants and spectators in any day of the event exceeds 75 but does not exceed 200;

(B) $50 for a special event (other than one involving commercial filming activity) in which the estimated number of participants and spectators in any day of the event exceeds 200 but does not exceed 400;

(C) $75 for a special event (other than one involving commercial filming activity) in which the estimated number of participants and spectators in any day of the event exceeds 400 but does not exceed 800;

(D) $100 for a special event (other than one involving commercial filming activity) in which the estimated number of participants and spectators in any day of the event exceeds 800 but does not exceed 1,000;

(E) $250 for a special event (other than one involving commercial filming activity) in which the estimated number of participants and spectators in any day of the event exceeds 1,000 but does not exceed 20,000;

(F) $500 for a special event (other than one involving commercial filming activity) in which the estimated number of participants and spectators in any day of the event exceeds 20,000; and

(G) $250 for a special event involving commercial filming activity, regardless of the estimated number of participants and spectators in any day of the event, except that the fee is $50 if the special event requires:

(i) only street closings and/or traffic management services; or

(ii) only the hooding of parking meters.

(2) All fees for permits and licenses required by other city ordinances to conduct specific

(6) the applicant fails to comply with or the proposed special event will violate a city ordinance or other applicable law, unless the prohibited conduct or activity would be allowed under this chapter;

(7) the applicant makes a false statement of material fact on an application for a special event permit or fails to properly complete an application for a special event permit;

(8) the applicant fails to provide proof that the applicant possesses or is able to obtain a license or permit required by another city ordinance or other applicable law for the conduct of all activities included as part of the special event;

(9) the applicant has had a special event permit revoked within the preceding 14 months;

(10) the applicant has committed, within the preceding 14 months, two or more violations of a provision of a special event permit or this chapter;

(11) the applicant fails to pay any outstanding fees assessed under Section 42A-8 of this chapter for the proposed special event or for a past special event;

(12) the applicant has conducted or sponsored one or more special events within the city on at least 60 days of the same calendar year during which the proposed special event is to be held, except that this 60-day limitation does not apply to a special event that involves a commercial movie production;

(13) the chief of the police department, the chief of the fire department, or the special event manager determines that the special event would pose a serious threat to the public health, safety, or welfare;

(14) the applicant or any other person responsible for the conduct or sponsorship of the special event is overdue in payment to the city of taxes, fees, fines, or penalties assessed against or imposed upon the applicant or other person;

(15) the applicant has a history of conducting or sponsoring special events in a disorderly, unsafe, unsanitary, or fiscally irresponsible manner;

(16) an event has been previously scheduled for the same time on property described in Section 42A-5(1) that is adjacent to the location of the proposed special event; or

(17) the applicant, if it is a corporation, fails to provide copies of a current certificate of account status and current certificate of existence as required by Section 42A-7(b)(14).

(b) The special event manager shall revoke a special event permit if:

(1) the applicant fails to comply with or the special event is in violation of any provision of the special event permit, a city ordinance, or any other applicable law;

(2) the permit holder made a false statement of material fact on an application for a special event permit or failed to properly complete an application for a special event permit;

(3) the chief of the police department, the chief of the fire department, or the special event manager determines that the special event poses a serious threat to the public health, safety, or welfare;

(4) the permit holder failed to pay any outstanding fees assessed under Section 42A-8 of this chapter for the proposed special event or for a past special event;

(5) the permit holder or any other person responsible for the conduct or sponsorship of the special event is overdue in payment to the city of taxes, fees, fines, or penalties assessed against or imposed upon the permit holder or other person; or

(6) the permit holder, if it is a corporation, failed to provide copies of a current certificate of account status and current certificate of existence as required by Section 42A-7(b)(14). (Ord. Nos. 18702; 19869; 21934; 24554; 26136)

**SEC. 42A-14. APPEAL FROM DENIAL OR REVOCATION OF A SPECIAL EVENT PERMIT.**

If the special event manager denies the issuance of a permit or revokes a permit, the special event manager shall send to the applicant or permit holder by certified mail, return receipt requested, written notice of the denial or revocation and of the right to an appeal. The applicant or permit holder may appeal the decision of the special event manager to a permit and license appeal board in accordance with Section 2-96 of this code. (Ord. Nos. 18702; 21934)

## ARTICLE III.

## ENFORCEMENT.

**SEC. 42A-15. OFFENSES.**

(a) A person commits an offense if he commences or conducts a special event:

    (1) without a special event permit; or

    (2) in violation of any provision of a special event permit, this chapter, or any other city ordinance or applicable law.

(b) A culpable mental state is not required for the commission of an offense under this section. (Ord. Nos. 18702; 19869; 21934)

**SEC. 42A-16. PENALTY.**

(a) A person who violates a provision of this chapter or a requirement of a special event permit is guilty of a separate offense for each day or part of a day during which the violation is committed or continued.

(b) Each offense is punishable by a fine not to exceed:

    (1) $2,000 for a violation of a provision of this chapter or a requirement of a special event permit governing fire safety, zoning, or public health and sanitation, including dumping of refuse; or

    (2) $500 for all other violations of this chapter or requirements of a special event permit. (Ord. Nos. 18702; 19869; 21934)

Special Events

*[Intentionally left blank]*

SEC. 31-11.   NUISANCE - JUDGMENT IN MUNICIPAL COURT.

Whenever a judgment is rendered in the municipal court against a person for violation of a city ordinance and the violation is defined as a nuisance, the person shall abate and remove the nuisance within 24 hours after judgment is rendered. If the person fails to abate the nuisance, the chief of police may abate and remove the nuisance. The expense incurred in abating and removing the nuisance will result in a lien on the real estate whereupon the nuisance existed, which may be levied as a special tax against the real estate. (Ord. 14971)

SEC. 31-12.   LIMITED HOURS OF CERTAIN COIN-OPERATED DEVICES.

(a)   A person commits an offense if, as owner, exhibitor, lessee, or employee of the owner, exhibitor, or lessee of a coin-operated amusement device located within 500 feet of a public or private elementary or secondary school, he permits a person under the age of 17 years to operate the coin-operated amusement device between the hours of 9 a.m. and 4 p.m. on days during the fall or spring term when students are required to attend school in the school district in which the device is located.

(b)   For the purposes of this section COIN-OPERATED AMUSEMENT DEVICE has the meaning ascribed to it in Section 6A-1 of this code.

(c)   The owner, exhibitor, or lessee of a coin-operated amusement device located within 500 feet of a public or private elementary or secondary school shall place a sign on the device that reads, "Play by Persons Under 17 Not Allowed during School Hours."

(d)   For purposes of this section measurements shall be made in a straight line without regard to intervening structures or objects, from the nearest entry door in the portion of a building where the coin-operated amusement device is located to the nearest entry door of the school.

(e)   A person violating Subsection (a) of this section is deemed to be maintaining a public nuisance and a police officer of the city who observes the violation shall seize all the coin-operated amusement devices in the establishment and upon conviction of the person for violation of Subsection (a), the city shall dispose of the devices in the manner provided by law. (Ord. Nos. 14971; 16585)

SEC. 31-13.   SLEEPING IN A PUBLIC PLACE.

(a)   A person commits an offense if he:

(1)   sleeps or dozes in a street, alley, park, or other public place; or

(2)   sleeps or dozes in a vacant lot adjoining a public street or highway.

(b)   It is a defense to prosecution under Subparagraph (2) of this section if the person owns the vacant lot or has the consent of the owner to sleep or doze on the vacant lot. (Ord. 14971)

SEC. 31-14.   ENTERING PORTIONS OF BUILDINGS WITHOUT CONSENT.

(a)   In this section:

(1)   BUILDING means an enclosed structure to which the public or a substantial group of the public has access;

(2)   CONSPICUOUSLY MARKED means a sign posted to be reasonably likely to come to the attention of anyone approaching an entrance to a portion of a building;

(3)   OWNER means a person who has title to a building or a leasehold interest in the building, or someone with apparent authority to act for a person who has title or a leasehold interest.

(b)   A person commits an offense if he enters a portion of a building without consent of the owner if the portion of the building entered is conspicuously marked to give notice that:

(1)   entry is restricted to a specific class of persons of which the actor is not a member; or

(2)   entry is prohibited to the public. (Ord. Nos. 14971; 15084)

## ARTICLE VII.

### SALE OF MERCHANDISE AND PRODUCE ON STREETS AND SIDEWALKS.

**SEC. 43-127. UNLAWFUL SOLICITATION AT THE CONVENTION CENTER AND REUNION ARENA.**

　　(a)　A person commits an offense if he solicits money on the premises of:

　　　　(1)　the convention center; or

　　　　(2)　reunion arena.

　　(b)　If a person engages in conduct that violates Subsection (a), the person must be ordered to stop the solicitation before being arrested. The order to stop the solicitation may be given by a police officer, security officer, or person with authority to control the use of the premises.

　　(c)　It is a defense to prosecution under Subsection (a) that:

　　　　(1)　no order was given to stop the solicitation;

　　　　(2)　an order, if given, was promptly obeyed; or

　　　　(3)　the person had the written consent of the lessee of the premises to conduct a solicitation.

　　(d)　For the purposes of this section, "convention center" means the area contained within the following boundaries:

BEGINNING at the intersection of the west line of Akard Street with the south line of Young Street;

THENCE along the south line of Young Street, in a westerly and northwesterly direction to its intersection with the east line of S. Griffin Street;

THENCE along the east line of S. Griffin Street, in a southerly direction to its intersection with the prolongation of the northerly line of a tract of land conveyed to the City of Dallas, by deed as recorded in Volume 83134, Page 5559, Deed Records of Dallas County, Texas;

THENCE along the prolongation of the northerly line and continuing along the northerly line of the abovementioned tract of land, in a westerly direction, passing the east line of S. Lamar Street and continuing to its intersection with the west line of S. Lamar Street;

THENCE along the west line of S. Lamar Street, in a southerly direction to its intersection with the most northerly line of the Final Plat Dallas Convention Center Expansion (City Plan File #S901-066R);

THENCE along the northerly line of the abovementioned Dallas Convention Center Expansion Plat, in a westerly direction to its intersection with the easterly line of Jefferson Boulevard Viaduct;

THENCE along the easterly line of Jefferson Boulevard Viaduct, in a southerly and southwesterly direction to its intersection with the southwesterly line of Hotel Street;

THENCE along the southwesterly line of Hotel Street, in a southeasterly direction to its intersection with the northwesterly R.O.W. line of E. R.L. Thornton Freeway (I.H. 30);

THENCE along the northwesterly line of E. R.L. Thornton Freeway (I.H. 30), in a northeasterly direction to its intersection with the northwesterly line of Canton Street;

THENCE along the northwesterly line of Canton Street, in a northeasterly direction to its intersection with the southwesterly line of Akard Street, excluding a tract of land bounded by Lamar Street, Canton Street, Griffin Street, and Memorial Drive;

THENCE along the southwesterly line of Akard Street, in a northwesterly and northerly direction to its intersection with the south line of Young Street, and the point of beginning.

　　(e)　For the purposes of this section, "reunion arena" means:

(1) inside the reunion arena building and that area within 50 feet of any entrance to or exit from the reunion arena building; and

(2) parking area A - being the area bounded by Hotel Street, North Drive, Sports Street and "South Park" designated as "Parking Area A", and being more particularly described as follows:

BEGINNING at a point on the west edge of the west sidewalk along Hotel Street, at a distance of 6 feet north of the north curb line of "Parking Area A";

THENCE in a southerly, westerly and northerly direction along the back edge of the sidewalk which is 10 feet from the curb line along Hotel Street, North Drive and Sports Street, 413 feet, more or less, to a point 6 feet north of the north curb line of "Parking Area A";

THENCE eastward along the south line of "South Park" and along a line which is 6 feet perpendicular distance north from and parallel with the north curb line of "Parking Area A", 246 feet to the place of beginning; and

(3) parking area B - being the area bounded by Stemmons Freeway, Reunion Boulevard, Sports Street and Sports Place, which is designated as "Parking Area B", and being more particularly described as follows:

BEGINNING at the intersection of the southeast right-of-way line of Houston Street Viaduct with the northeasterly right-of-way line of Stemmons Freeway;

THENCE in a northwesterly and northerly direction along the northeast and easterly right-of-way line of Stemmons Freeway, and along a line which is 15 feet eastward from the east curb line of the frontage road, 1632 feet, more or less, to the north curb line of "Parking Area B";

THENCE eastward along the north curb line, 213.24 feet to the southwesterly right-of-way line of Reunion Boulevard;

THENCE southeastward along the southwest right-of-way line of Reunion Boulevard and along a line which is 10 feet southwest from the southwest curb line, 100 feet, more or less, to the easterly right-of-way line of Sports Street;

THENCE southerly and southeasterly along the westerly and northwesterly right-of-way line of Sports Street and along a line which is 10 feet westerly and southwesterly from the westerly curb line of Sports Street, 1367 feet, more or less, to the southeast right-of-way line of Houston Street Viaduct;

THENCE southwesterly along the southeast right-of-way of Houston Street Viaduct and along a line which is 40 feet southeastward from the center line of the Viaduct, 230 feet, more or less, to the place of beginning.

(4) parking area C - being the area bounded by Memorial Drive, Sports Street, Sports Place and Hotel Street, designated as "Parking Area C", and being more particularly described as follows:

BEGINNING at the intersection of the northwest edge of the sidewalk along the northwest side of Memorial Drive with the northeast edge of the sidewalk along the northeast side of Sports Street;

THENCE northwestward along the northeast edge of the sidewalk along the northeast side of Sports Street, 280 feet, more or less, to a point on the southeast edge of the sidewalk along the southeast side of Sports Place;

THENCE northeastward along the southeast edge of the sidewalk along the southeast side of Sports Place, 445 feet, more or less, to the northeast curb line of "Parking Area C";

THENCE southeastward along the curb line of the parking area and along the southwest line of Hotel Street, 275 feet, more or less, to a point on the northwest edge of the sidewalk along the northwest side of Memorial Drive;

THENCE southwestward along the northwest edge of the sidewalk along the northwest side of Memorial Drive, 410 feet, more or less, to the place of beginning.

(5) parking area D - being the area bounded by Stemmons Freeway, Sports Place, Sports Street, and Memorial Drive, designated as "Parking

Area D", and being more particularly described as follows:

BEGINNING at the intersection of the southwestward prolongation of the northwest line of the sidewalk along the northwest side of Memorial Drive with the southeastward prolongation of the line of the post with chain, which is approximately 7 feet from and parallel with the northeast curb line of the east frontage road along Stemmons Freeway;

THENCE northwestward along the line of the post with chain, along the northeast side of Stemmons Freeway, 265 feet, more or less, to an angle point in the curb line of "Parking Area D";

THENCE angle right 35° 00' and northward along the curb line of the parking area, 28 feet, more or less, to a corner in the curb;

THENCE angle right 70° 00' and northeastward along the curb line of the parking area, 19 feet to an inside corner;

THENCE angle left 90° 00' and northeastward along the curb line of the parking area, 9 feet to the southeast edge of the 10-foot wide sidewalk along the southeast side of Sports Place;

THENCE northeastward along the southeast edge of the sidewalk along Sports Place, 184 feet to a point for corner in the curb line of the parking area;

THENCE angle right 90° 00' and southeastward along the curb line of the parking area, 9 feet to an inside corner;

THENCE angle left 110° 00' and northward along the curb line of the parking area, 19 feet, more or less, to a point on the southwest edge of the sidewalk along the southwest side of Sports Street;

THENCE southeastward along the line of the southwest edge of said sidewalk, 282 feet, more or less to a corner in the curb line of the parking area, said corner being approximately 13 feet southeast from the southeast line of columns for Jefferson Street Viaduct;

THENCE angle right 90° 00' and southwestward along the curb line of the parking area, 19 feet, more or less, to an inside corner in the curb line;

THENCE angle left 90° 00' and southeastward along the curb line of the parking area, 18 feet, more or less, to a point on the northwest edge of a 10-foot wide sidewalk along the northwest side of Memorial Drive;

THENCE southwestward along the line of the northwest edge of the sidewalk along the northwest side of Memorial Drive, 218 feet, more or less, to the place of beginning.

(6) parking area E - being the area bounded by Memorial Drive, Hotel Street, R. L. Thornton Freeway and Stemmons Freeway, designated as "Parking Area E", and being more particularly described as follows:

BEGINNING at the southeast corner of "Parking Area E", which is the intersection of the southwest edge of the sidewalk along the southwest side of Hotel Street with the post with chain line along the north line of R. L. Thornton Freeway;

THENCE in a westerly and northwesterly direction along the line of post with chain, along the northerly line of R. L. Thornton Freeway and the northeasterly line of Stemmons Freeway, 1380 feet, more or less, to a curb line at the northwest corner of "Parking Area E", at a distance of approximately 30 feet south of the prolongation of the southeast curb line of Memorial Drive;

THENCE angle right 90° 00' and northeastward along the curb line of said parking area, 22 feet, more or less, to an inside corner in said curb line;

THENCE angle left 80° 00' and northwestward along the curb line of said parking area, 19 feet to the southeast edge of a 10-foot wide sidewalk along the southeast side of Memorial Drive;

THENCE northeastward along the southeast edge of the sidewalk along the southeast side of Memorial Drive, 189 feet to a corner in said parking area;

THENCE angle right 90° 00' and southeastward along the curb line in said parking area, 19 feet to an inside corner of said curb;

THENCE angle left 100° 00' and northeastward along a curb line in said parking area, 20 feet to the southwest edge of the sidewalk along the southwest side of a drive designated as "Driveway E";

THENCE angle right 90° 00' and southeastward along the southwest edge of the sidewalk along the southwest side of said drive, 15 feet, more or less, to its intersection with the southwestward prolongation of the southeast edge of a 10-foot wide sidewalk along the southeast side of Memorial Drive;

THENCE northeastward along the line of the southeast edge of the 10-foot wide sidewalk along the southeast side of Memorial Drive, 450 feet, more or less, to a corner in the most northerly portion of "Parking Area E";

THENCE angle right 90° 00' and southeastward along a curb line in said parking area, 19 feet to an inside corner in the curb line of said parking area;

THENCE angle left 90° 00' and northeastward parallel with Memorial Drive and along a curb line of said parking area, 18 feet, more or less, to the southwest edge of the sidewalk along the southwest side of Hotel Street;

THENCE southeastward along the southwest edge of the sidewalk along the southwest side of Hotel Street, 1078 feet, more or less, to the place of beginning.

(7)  parking area F - being a fenced area lying within the right-of-way of Stemmons Freeway at R. L. Thornton Freeway, designated as "Parking Area F", and being more particularly described as follows:

BEGINNING at the intersection of the chain link fence along the southwest side of the east frontage road along Stemmons Freeway with the northeastward prolongation of the chain link fence along the northwest side of "Parking Area F", said point being approximately 12 feet south of the south end of the headwall of the culvert for Mill Creek Channel;

THENCE southeastward along the line of the chain link fence along the southwest side of the east frontage road, 450 feet, more or less, to a fence corner;

THENCE angle right 90° 00' and southward along the chain link fence, 25 feet, more or less, to an inside corner of the chain link fence;

THENCE angle left 65° 30' and southeastward along the chain link fence, 25 feet, more or less, to a fence corner;

THENCE southwestward along a chain link fence line along the northwest line of an access road from the east frontage road to R. L. Thornton Freeway, known as "Connection G", 253 feet, more or less, to a fence corner being the most southerly corner of said "Parking Area F";

THENCE northwestward along the chain link fence line, along the southwest side of the parking area, 467 feet, more or less, to a fence corner on the northwest line of said parking area;

THENCE northeastward along the chain link fence along the northwest side of said parking area, 135 feet, more or less, to the place of beginning.

(8)  parking area G - being the area bounded by Houston Street Viaduct, Stemmons Freeway and Industrial Boulevard, and being the area enclosed by chain link fence and post with chain, designated as "Parking Area G" and being more particularly described as follows:

BEGINNING at a fence corner at the intersection of the northwest right-of-way line of Houston Street Viaduct with the westerly right-of-way line of Stemmons Freeway;

THENCE in a southeasterly and southerly direction along a chain link fence along the westerly right-of-way line of Stemmons Freeway, 1022 feet, more or less, to a point on the northeast right-of-way line of Industrial Boulevard;

THENCE in a northwesterly direction along a line of post, with chain, along the northeast right-of-way line of Industrial Boulevard, 822 feet, more or less, to a fence corner which is 3 feet southeast from the northwest right-of-way line of Houston Street Viaduct;

THENCE in a northeasterly direction along a chain link fence which is 3 feet southeast from the northwest right-of-way line of Houston Street Viaduct, 121 feet, more or less, to a fence corner;

THENCE angle left 90° 00' in a northwesterly direction along a chain link fence, 3 feet to a fence corner;

THENCE angle right 90° 00' in a northeasterly direction along a chain link fence along the northwest right-of-way line of Houston Street Viaduct, 336 feet, more or less, to the place of beginning.

        (9)  the Houston Loop Parking Area - being the area bounded by Houston Street, Houston Street Viaduct, AMTRAK right-of-way and Reunion Boulevard, designated as "Houston Loop Parking Area" and being more particularly described as follows:

BEGINNING at a point on the back of the east curb line of "Houston Loop Parking Area", which is along the west line of Houston Street said point being approximately 12 feet north of the north end of Houston Street Viaduct;

THENCE southward along the back edge of the east curb line of said parking area and parallel with Houston Street Viaduct, 607 feet, more or less, to a guard rail with post;

THENCE southwestward along the guard rail and post, 40 feet, more or less, to a chain link fence; which is on the northeast right-of-way line of AMTRAK;

THENCE northwestward along the northeast line of the AMTRAK right-of-way and along a chain link fence, 575 feet, more or less, to the northwest curb line of said parking area;

THENCE northeastward along the curb line which is approximately 50 feet southeast from and parallel with the southeast curb line of Reunion Boulevard, 260 feet, more or less, to the beginning of the concrete pavement for the exit drive to Reunion Boulevard, which is also the northeast corner of a concrete pad for a revenue control system;

THENCE angle right 90° and southeastward, 19 feet;

THENCE angle left 45° 00' and eastward 122 feet, more or less, to the place of beginning. (Ord. Nos. 15167; 16834; 24554)

SEC. 43-128.     RESERVED.

    (Repealed by Ord. 16309)

SEC. 43-129.     CAUSING CROWD TO CONGREGATE ON SIDEWALK.

    No person shall occupy any space on the sidewalk or any space near the sidewalk where the same attracts any crowd or causes any crowd to congregate on the sidewalk or where the patrons or customers must remain on the sidewalk, for the purpose of carrying on any kind of business whether for amusement or profit. (Code 1941, Art. 143-8)

SECS. 43-130 THRU 43-132.  RESERVED.

    (Repealed by Ord. 16309)

SEC. 43-133.     USE OF SIDEWALK FOR DISPLAY OF MERCHANDISE.

    No merchant or owner of a building, fronting on any street, shall be allowed the use of any portion of any sidewalk for the display of goods, wares or merchandise. (Code 1941, Art. 143-12; Ord. 3707)

SEC. 43-134.     USE OF SIDEWALK TO FORWARD OR RECEIVE MERCHANDISE.

    Nothing in this article shall be so construed as to prevent any merchant from occupying not more than one-half of any sidewalk in receiving and forwarding goods, wares and merchandise; provided, that such goods, wares and merchandise shall not remain on such sidewalk for a longer period than one and one-half hours. (Code 1941, Art. 143-12; Ord. 3707)